## HUMBLE OIL & REFINING COMPANY V. RAILROAD COMMISSION OF TEXAS, ET AL.

No. A-2305. Decided October 26, 1949.
(223 S. W., 2d Series, 785.)

*J. A. Rauhut,* of Austin, *R. E. Seagler, W. J. Merrill, Rex G. Baker,* and *Nelson Jones,* all of Houston, for appellant.

*Price Daniel,* Attorney General, *Joe R. Greenhill* and *C. K. Richards,* Assistants Attorney General, for appellee.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is a direct appeal by appellant from the judgment rendered on May 20, 1949, in Cause No. 82285, in the 98th District Court of Travis County. The judgment dissolved a temporary injunction, denied a permanent injunction prayed for by appellant, and declared the order of the Railroad Commission involved therein legal.

Appellant moves this Court to dismiss its appeal and the cause in the trial court, without prejudice, on the ground that the issues in this cause have become moot. In support of its motion, appellant presents the following facts:

That this suit was filed on November 24, 1948, by appellant against the Railroad Commission, its members, and the Attorney General, for the purpose of testing the validity of an order of the Railroad Commission dated November 23, 1948; that the order complained of prohibited the production of any oil or gas from any well in the Tijerina-Canales-Blucher Field, located in Jim Wells and Kleberg Counties, Texas, from and after December 1, 1948, unless all casinghead gas produced in that field was devoted to one of the uses specified in the order; and that on March 31, 1949, appellant completed and placed in operation

its King Ranch Gas Plant, which is capable of compressing and returning to the earth all of the casinghead gas produced by appellant's wells in several oil fields, including Tijerina-Canales-Blucher.

That on May 11, 1949, appellant filed in the district court its first amended original petition, alleging that it had completed its King Ranch Gas Plant; that it had connected all of its Tijerina-Canales-Blucher wells to said plant; that except when prevented by circumstances beyond its control, appellant was and is devoting all casinghead gas to one of the uses specified in the order; and that, because of circumstances beyond its control, it is physically impossible to inject all casinghead gas, and therefore physically impossible to comply with the order. Appellant also alleged that it had advised the Railroad Commission that it was impossible to comply with the order, and had applied to the Railroad Commission for relief, but that the Railroad Commission declined to grant any relief to appellant, and refused appellant's request for a hearing. Appellant further alleged that violation of the order would subject it to heavy penalties, provided by the laws of Texas and of the United States, and that appellant had no adequate remedy at law to prevent the wrongs and irreparable injuries which would result from an enforcement of the order. Appellant prayed that on final hearing the temporary injunction be made permanent.

That on May 20, 1949, after final hearing, the District Court rendered judgment dissolving the temporary injunction and denying any relief to appellant. That the District Court found as a fact that, although appellant's plant was a modern and efficient one, mechanical failures were inevitable, and it was humanly impossible to operate appellant's oil wells without flaring some casinghead gas, because from time to time there would be unavoidable break-downs in the gathering, compressing, and injecting facilities. Notwithstanding these fact findings, the District Court concluded that, by reason of the decision of this Court in the case of Railroad Commission et al v. Sterling Oil & Refining Co., 147 Texas 547, 218 S. W. (2d) 415, it was required to hold the order of the Railroad Commission valid.

That on July 25, 1949, the Railroad Commission issued an order which had the effect of amending and construing the original order involved in the original suit. In its order issued July 25, 1949, the Railroad Commission recognizes that the mechanical equipment in use in the production and handling of gas in the Tijerina-Canales-Blucher Field cannot be expected to operate without failure from time to time, and that such failure

of equipment is an inherent part of operations of this nature, and that it is therefore not possible to prevent all flaring or venting of casinghead gas.

That in the order issued July 25, 1949, the Railroad Commission expressly limits the order in suit to the prohibition of *avoidable waste* of gas, and expressly provides that flaring or venting of gas caused by circumstances beyond the control of the operator shall not be a violation of the order.

That the sole ground upon which appellant attacked the original order, dated November 23, 1948, was that said order by its express terms made the flaring or venting of gas a violation of the order, even though such flaring or venting of gas was caused by circumstances beyond the control of appellant. This ground is also the sole ground upon which appellant attacks the order involved in this suit. The order issued July 25, 1949, remedies the defect in the order dated November 23, 1948, of which appellant complained in the District Court, and of which appellant complains in this suit. Appellant contends that the issuance of the order of July 25, 1949, after the District Court entered its judgment and after appellant perfected this appeal, has so altered the facts of this case as to render the controversy moot, both in this Court and in the District Court, and that if the order issued July 25, 1949, had been promulgated by the Railroad Commission prior to the date of the trial in the District Court, appellant would have voluntarily dismissed its suit in the District Court.

That because of the facts above stated, appellant suggests to this Court that this appeal and appellant's suit in the District Court should be dismissed without prejudice, on the ground that the controversy has become moot.

The Railroad Commission did promulgate and issue on November 22, 1948, and November 23, 1948, respectively, certain orders governing the production and handling of gas wells completed in the various fields to which said orders were made applicable. The orders applied to many gas fields, and all contained practically the same provisions. The order dated November 22, 1948, applied to the Heyser Field in Calhoun County, and the order dated November 23, 1948, applied to the Tijerina-Canales-Blucher Field, in Jim Wells and Kleberg Counties, and is the order involved here.

Suit was filed by the Sterling Oil & Refining Co. et al. against the Railroad Commission in the 98th District Court of Travis

County to enjoin the enforcement of the order of the Railroad Commission relating to the Heyser Field. The trial court rendered judgment declaring the order invalid, and enjoined its enforcement. The Railroad Commission and others brought the case in a direct appeal to this Court, and on February 16, 1949, this Court held that the order of the Railroad Commission involved was reasonable, was supported by substantial evidence, and was valid. This Court further held that the order was not discriminatory, unreasonable, or arbitrary. The judgment of the trial court was reversed, and the injunction restraining the enforcement of the order was dissolved. 147 Texas 547, 218 S. W. (2d) 415. Reference is made to that opinion, in which the original order of the Railroad Commission, dated November 22, 1948, and the clarifying order dated January 17, 1949, are discussed.

The order of the Railroad Commission issued July 25, 1949, describes the various orders issued by the Railroad Commission relating to other gas fields, and since it discloses the policy of the Railroad Commission in dealing with this question, the pertinent and controlling part of the order is here quoted:

"WHEREAS, There is contained in each of the above identified orders, which orders were made effective as of December 1, 1948, the provision that *all* of the gas produced incident to the production of oil and gas from wells affected by said orders was to be, from and after the effective date of each of said orders, made available for one or more of the uses for gas as set out in each respective order; it being the expressed intent of the Commission, as set forth in each of said orders, to limit the production of gas from any and all of the reservoirs thereby affected to that volume of gas produced therefrom that thereafter was utilized for one or more of the uses prescribed in each respective order; and

"WHEREAS, From time to time since December 1, 1948, and as concerns one or more of the aforementioned orders, the operators of oil and/or gas wells and gas processing plants affected by them have petitioned the Commission to amend said orders and have particularly sought to have them amended in such manner as to allow the venting or flaring of gas where such venting or flaring is occasioned by mechanical failure of equipment and various analagous and/or associated happenings, or incidents which arise but cannot necessarily be foreseen by the producers of such gas or by the operators of gas processing and/or gas transportation facilities handling it; it having been pointed out by those who have sought to have said orders so amended that, as a practical matter, it is impossible to prevent

some gas produced from the fields affected by these orders from being vented or being flared; and

"WHEREAS, The Commission is aware that the mechanical equipment in use, and necessary to be used, in the production and handling of the gas produced from the fields here in question, as well as from all other fields where gas production is obtained, cannot be expected to operate without failure of one nature or another; that such failure of mechanical equipment is an inherent part of operations of this nature and that it is, therefore, not reasonable to assume that any individual or group of individuals can forecast when such will occur, where such will occur, or what the nature and extent thereof will be; that because of the inherent elements involved in practical operations under the aforesaid orders, there will be some gas vented or flared in fields affected by these orders but for the very reason that it cannot be foreseen when and where such failures will occur or what the nature and extent thereof will be, it likewise cannot be determined what tolerance feature, if incorporated in these orders, would result in the accomplishment of the purposes sought to be accomplished by them and yet provide for sufficient latitude to take care of gas-flare resulting from the arising of these unforeseeable contingencies; and

"WHEREAS, This Commission has prior to this time, and on various occasions, announced publicly the policy which it intends to follow in connection with the application of the provisions of the aforementioned orders and in such public announcements has said that this Commission construes and interprets the orders involved to refer to and to prohibit *avoidable* waste of gas and that this Commission intends to apply a rule of reason in connection with the operations under these orders, such announcements on this matter as have heretofore been made by this Commission having not, however, been incorporated in a general order of the Commission relating to all of the fields involved; and

"WHEREAS, It is deemed advisable by this Commission at this time to set forth, in a general order of this Commission, its intrepretation of the flare-gas orders hereinabove described insofar as any interpretation thereof is needed to clarify, in the minds of all concerned, any issues arising out of any provisions therein contained that, by some parties, might be construed to imply that an *unavoidable* waste is sought to be prevented by said orders.

"IT IS, THEREFORE, ORDERED By the Railroad Commission of Texas that the following interpretation of the flare-gas operating orders hereinabove described be and such is hereby pro-

mulgated to clearly state the construction which this Commission has in the past placed, and will in the future place, thereon:

"(1) This Commission interprets the provisions of those flare-gas operating orders described in this order to refer to and to prohibit *avoidable* waste of gas produced with oil; and in applying and enforcing the provisions of these orders, this Commission will apply a rule of reason in accordance with the policy announced by the Chairman of this Commission at this Commission's Statewide Hearing held in Beaumont, Texas, on June 17, 1949, wherein the following statment was made:

"There has been concern expressed by some operators about the unavoidable and temporary flaring or venting of gas which results from mechanical failures in gathering systems and at plants and at compressor stations, or other unforeseeable and unavoidable accidents and incidents in connection with the gathering, transporting, compressing, processing, and utilization of natural gas produced as an incident to the production of oil.

"The Commission will continue, as in the past, to apply the rule of reason. What we are seeking to accomplish is the prevention of *avoidable* waste of gas produced with oil. We are seeking beneficial use of this gas formerly wastefully vented to the air by burning in flares.

" 'In short, the Texas Railroad Commission is seeking to have this valuable natural resource devoted to some lawful and beneficial use to mankind instead of having it burned wastefully in the air.' "

The trial court found that appellant's plant was a modern and efficient plant, but that mechanical failures were inevitable, and that it was impossible for appellant to operate its oil wells without flaring some casinghead gas, because of unavoidable breakdowns. The order of the Railroad Commission issued July 25, 1949, recognizes this fact, and limits itself to the prohibition of *avoidable waste* of gas, and it provides that the flaring or venting of gas that is unavoidable shall not be a violation of the order. This leaves no contested issued at this time to be determined by this appeal. The Railroad Commission has achieved the result desired by it in this case, and there is now no actual controversy existing between the parties to litigate.

Since the order dated November 23, 1948, has been amended and construed by the order dated July 25, 1949, which latter order expresses the policy of the Railroad Commission with reference to the flaring of gas, the proper disposition of

this case calls for a reversal of the judgment of the trial court and a dismissal of the cause, but without prejudice, so that, if necessary, the Railroad Commission can subsequently institute proceedings to enforce its orders relating to the flaring of gas. Corzelius et al. v. Harrell, 143 Texas 509, 186 S. W. (2d) 961; Danciger Oil & Refining Co. of Texas v. Railroad Commission of Texas et al. 122 Texas 243, 56 S. W. (2d) 1075; City of West University Place v. Martin et al., 132 Texas 354, 123 S. W. (2d) 638.

As the question presented here is moot, and there remains nothing for this Court to decide, this cause is dismissed without prejudice, and the Railroad Commission can subsequently, if necessary, institute proceedings to enforce its rules controlling the flaring or venting of gas.

Opinion delivered October 26, 1949.

No motion for rehearing filed.